[No. 21005.  *En Banc.*  July 10, 1928.]

# L. ROMANO COMPANY, *Appellant,* v. SKAGIT COUNTY et al., *Respondents.*[1]

[1] HIGHWAYS (33)—CONSTRUCTION—CONTRACT—INTERPRETATION OF TERMS.  A finding that a highway contract called for steel in concrete gutters without separate charge therefor, is sustained by blue prints and drawings indicating reinforced concrete in gutters without specifying the price of the bars, as was done in structures other than gutters.

[2] SAME (33).  Under a highway contract for clearing at a lump sum, providing that the clearing "in general" shall be fifty feet wide, but greater widths when ordered by the county engineer, clearing under the lump sum bid was not limited to fifty feet by reason of a working profile plan indicating such width.

[3] SAME (33)—EXTRA WORK.  Findings refusing an allowance for extra cost in repiling logs and debris along the right of way in county road work, are sustained where it appears that such repiling was due to the contractor's lack of prudence in not piling them off the right of way in the first place.

[4] SAME (33).  Extra compensation for excess yardage removed in excavation is properly disallowed where the evidence shows it was attributed to under-cutting on the hillside and the engineer's estimates included all excavation within the slope lines according to the plans and stakes set.

[5] SAME (33).  Findings denying extra pay for overhaul, which was stated to be only a preliminary estimate, are sustained where the expert testimony and opinion was in dispute, and there was no arbitrary action on the part of the county engineer.

[6] HIGHWAY (33)—DAMAGES (35)—CONTRACTS—LIQUIDATED DAMAGES—STIPULATIONS AGAINST DELAY IN PERFORMANCE.  Quitting a county road job, because of exhaustion of the funds, under highly exhorbitant claims for extra compensation, amounts to an unwarranted abandonment of the work, subjecting the contractor to liquidated damages for delay, provided for in the contract.

Appeal from a judgment of the superior court for Skagit county, Bell, J., entered March 1, 1927, in favor

[1] Reported in 268 Pac. 898.

of the defendants, in an action on a public improvement contract, tried to the court. Affirmed.

*Paul & Long (Theodore D. Carlson,* of counsel), for appellant.

*Hamlet P. Dodd, Warren J. Gilbert,* and *Wilbra Coleman,* for respondents.

MITCHELL, J.—This is an appeal from a judgment in an action brought for the recovery of money alleged to be due for the construction of a county road in Skagit county, spoken of as the Wickersham Road. The action involved a number of kinds of work done and materials furnished. The contract under which the work was performed was a unit price contract, with the exception of the clearing and grubbing, which was a lump sum contract. The issues were made up including counterclaims interposed by the defendant county, and trial was had to the court without a jury. The plaintiff has appealed because it was not allowed to recover certain specified items set up in its complaint and covered by the evidence, and because of one item allowed the defendant county on its counterclaim. These items will be considered in their order. The county will be spoken of as the respondent.

[1] The first item or assignment is that the trial court erred in refusing to render judgment compensating appellant for 12,320 pounds of reinforcing steel bars used in gutters on the project. An argument on behalf of the appellant, that the contract was ambiguous in this particular and should be construed most strongly against the respondent, is made on the claim that, when the controversy over the item arose, the county engineer, representing the county, admitted that the steel should be paid for separately. A representative of the appellant corporation so testified, but

that testimony was flatly contradicted by the county engineer and others who were present. Upon this issue of fact, the preponderance, we think, is against the appellant. Such was the conclusion of the trial judge as expressed in his written opinion, which has been furnished to us by the appellant, and which was carried into the judgment.

Further, a reasonable construction of the contract by its terms with respect to this item leads to a conclusion against the appellant in our opinion. The gutters, in which the steel was used, are standard concrete gutters. The specifications for them, which are made a part of the contract, appear on a detailed drawing or blue print, affording information in detail consisting, among other things, of steel bars imbedded at intervals transversely through the gutter and into the pavement proper of the roadway, and two steel bars running with, or lengthwise of, the gutter. Certain items on the bid sheet or proposal of the appellant, which are a part of the contract and which are important in the present consideration, are as follows:

"7 in. plain paving at $2.17 per square yard; Class A. concrete at $40.00 per cubic yard; Class B. concrete at $25.00 per cubic yard; rein. bars pav. at 15c per lb.; and rein. bars strs. at 8c per lb."

That is, for steel in the seven-inch paving fifteen cents per pound, and for steel used in cubical concrete in structures such as bridges, abutments, and probably culverts, eight cents per pound, while as to the gutters it simply says "stan. conc. gutter 9,674 lin. ft. at 40c per lin. ft." There being a separate statement or proposal fixing price for steel used in the plain paving and that used in cubical concrete in structures, and none for that used in the gutter, we think it must be held to mean that there was to be no separate charge for the steel used in the gutter and that the judgment

in the trial court in this respect was correct, there being no contention that any excess quantity of steel was used in the gutters.

[2] The next assignment is that the court erred in refusing an allowance for clearing outside of the right of way. The contract, in this respect, provides:

"The right of way will in general be cleared to the width of 25 feet on each side of the center line, but will be cleared to greater widths where ordered by the county engineer. Clearing outside of the right of way shall be done under the same specifications and be paid for at the same price as clearing within the right of way. The clearing will in all cases conform to the stakes set by the county engineer. . . . Clearing will be paid for by the acre for the area actually cleared by the contractor in accordance with the stakes set by the county engineer."

The working profile plan relied on by the appellant indicates a clearing fifty feet in width, and therefrom it is argued, as we understand, that all clearing outside of the fifty-foot strip must be paid for over and above appellant's lump sum bid of $15,000. But the assumption is too narrow. The contract, either with or without the working profile, does not say that the right of way on which the lump sum bid for clearing and grubbing was made and accepted is only fifty feet in width, but it says that the right of way will *in general* be cleared twenty-five feet on each side of the center line, and continuing, and in the same sentence, the contract says "but will be cleared to greater widths where ordered by the county engineer." That is, the right of way will be cleared more than fifty feet in width when ordered, thus negativing the idea of a right of way only fifty feet wide, within the lump sum contract price. The other provision quoted, viz: "Clearing outside the right of way shall be done under the same specifications and be paid for at the same

price as clearing within the right of way," would obviate the necessity for the new contract upon this feature, if finally there was some change in the exact location of the road as shown on the working profile of the plan.

The roadway was to be leveled and graded to a width of thirty-five feet and, of course, where the surface of the road as graded was level with the natural contour, clearing a width of fifty feet would be sufficient, but the fact was and the profile shows cuts and fills of considerable magnitude, the slopes of the cuts to be three-fourths to one and one to one, and of the fills or embankments one and one-half to one. It was apparent, therefore, that where considerable cuts were made the hillside slopes and slopes of the embankments would extend the width of the clearing more than twenty-five feet on each side of the center line of the roadway.

Appellant makes no contention that these slopes were greater or wider than necessary. Bearing upon this question, there is a disputed question of fact. Appellant's testimony tended to show that stakes were not set for clearing outside the fifty-foot strip until after that strip had been cleared, arguing therefrom that that strip was thus marked as the right of way, and that afterwards stakes were set to cover the slopes of the cuts and fills, the clearing of which entitles the appellant to extra compensation. On the other hand, the respondent's testimony showed that, in advance of the clearing, stakes were set at locations which marked the width of clearing necessary to take care of the proposed slopes; that where no greater width was required, the stakes were set twenty-five feet on each side of the center line; and when greater width was required, they were set at such greater distances. Upon this question of fact, the trial court was of the

opinion that the evidence convincingly preponderated in favor of the respondent, and upon our study of the record we are not disposed to disturb that view. We conclude that the clearing referred to in this item was included in appellant's lump sum bid for clearing and grubbing.

Two substantial changes were made in the location of the road from the original location upon which appellant's lump sum bid for clearing and grubbing was based, necessitating extra clearing, for which it is assigned as error that allowances made by the court were insufficient. They are spoken of as revisions number 1 and 2. Revision number 1 took in a roadway already in use, and the principal controversy was over the condition of the old roadway with respect to the amount of clearing and grubbing it required. The respondent admitted that altogether the change added 303 thousandths of an acre to be cleared and graded. The appellant claimed that the change added more than an acre. Upon this dispute the court decided in favor of the respondent and we are not disposed to disturb the finding. The price per acre allowed by the court is not questioned.

Revision number 2 increased the amount of clearing and grading, and the controversy over this is whether or not there was a specific lump sum agreement made, at the time the change was ordered, of the amount to be paid for it. Upon this disputed question of fact, the trial court found in favor of the respondent. We are satisfied the weight of the evidence was with the respondent.

[3] It is assigned that the court erred in refusing to allow appellant the cost of removal and repiling of logs and debris along the right of way. The contract provided that trees, brush, logs, etc., should be burned within the right of way, ahead of the grading crew.

Certain logs and debris had to be removed after the appellant had disposed of them off the right of way as he supposed, but it happened that they were not off the right of way. This presents again a question of fact as to what is meant by right of way, already discussed, and when the stakes for it were set. The trial court, mentioning the witnesses who testified on this point for the respective parties, said:

"The testimony too clearly preponderates in favor of defendant to permit of any other conclusion than that the right of way was correctly staked before clearing and that the slope stakes were set in advance of grading and were not refused to contractor at any time when it was unreasonable to deny such and that the ordinary engineering skill and practice was exercised. When the grading came to be performed by plaintiff, inspectors found that debris and logs were not removed beyond the limits of the slopes and fills required to be made and plaintiff was thus required to move such farther out or to otherwise dispose of such."

The record supports that view. The expense of removing the logs and debris was caused by appellant's lack of prudence in piling them on the right of way the first time without burning them.

[4] In the next assignment of error the appellant claims compensation for 11047.7 yards of common excavation at fifty cents per cubic yard in excess of the estimates allowed and paid for. The dispute upon this point is not so much as to the quantity actually excavated, but whether or not the amount claimed, or any amount, over the estimates made by the county engineer, is attributable to under-cutting on the hillsides in making the excavation. It was convincingly shown that there had been very substantial undercutting, and while there was a conflict in the evidence as to the full extent of it, the record sustains the opinion and judgment of the trial court that the engi-

neer's estimates included all excavation within the
slope lines according to the plans and specifications
and stakes set upon the ground by the engineer's crew.
In this connection, the appellant contends that the
slopes provided by the plans of the respondent were
too steep, considering the nature of the soil, resulting
in sloughing of the soil, thereby adding to the amount
to be removed. Upon this, there was a conflict in the
evidence, the weight of which preponderates against
the claim of the appellant.

[5] In the next assignment, it is claimed that the
court erred in not allowing the appellant $745.80 for
overhaul, alleged to have been arbitrarily denied by the
county engineer. True, the original estimate of over-
haul was fixed appreciably in excess of what was al-
lowed finally, but in that preliminary estimate it was
stated that it was an estimate for the purpose of com-
paring bids, and besides it included contemplated
roadway that was not completed. Clearly, under the
proof, a preliminary estimate cannot so nearly ap-
proach accuracy as one made after work. Such latter
estimates and diagrams were made on behalf of each
side in this case and introduced in evidence supported
by considerable expert oral testimony. There was an
appreciable difference of opinion, due somewhat to
different views as to the balance points, that is, the
most available distribution point for depositing earth
excavated. It is difficult to ascertain the extent that
the amount of earth caused by under-cutting, hereto-
fore mentioned, affected or entered into this question
of overhaul as computed on behalf of the appellant.
Upon all of the evidence, we are of the opinion that
the decision of the trial court in favor of the respond-
ent was right, whether it is viewed from the stand-
point of either arbitrary or ordinary conduct on the
part of the county engineer.

[6] It is claimed that the court erred in allowing respondent liquidated damages for forty-four days delay by the appellant in completing the work, at $2.50 per day. The work was done under the Donohoe Road Law, local improvement district number 10 being created to finance the work. The contract provided that work should cease whenever the funds of the district became exhausted. The argument on behalf of the appellant is that, when the work was suspended August 25, 1926, he had earned all the money in the fund, and that, upon the respondent refusing to pay its claim, it ceased work, as it had the right to do and was required to do, without any liability under the clause for liquidated damages on account of delay mentioned in the contract. The foundation of the argument is wrong. At that time, appellant's claim was highly exorbitant, as the court has found, and quitting without its being paid must be considered as an abandonment of the work by the appellant. The trial court found and adjudged that, at the time appellant quit work, there was sufficient money in the funds to pay for the work performed and to be performed.

In addition to the formal assignments of error above mentioned appellant in its brief presents another item of $452.40 for an alleged delay of appellant's grading crew, claimed to have been caused by the respondent and its officers. This claim is without merit in our opinion. The fact that the trial court, in speaking of the crew, designated it at one place *mixing,* instead of *grading,* crew appears to have been an inadvertence that should cause no real confusion.

Affirmed.

TOLMAN, PARKER, MAIN, ASKREN, and HOLCOMB, JJ., concur.